IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PATRICK L. SHERMAN                                                    PLAINTIFF

         v.                        Civil No. 6:13-cv-06049

HOT SPRING COUNTY, ARKANSAS;
OFFICER DONALD MORELAND; DETECTIVE
DAN USSERY; CHIEF OF POLICE DONNIE
D. TABER; SERGEANT BRIAN ORRELL; and
SHERIFF HOLLINGSWORTH                                                DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

Plaintiff maintains he was unlawfully arrested on September 17, 2012, and subjected to unconstitutional conditions of confinement while being held in the Hot Spring County Detention Center.  Currently pending before me for issuance of this report and recommendation are the following motions: (1) a motion for summary judgment filed by the Plaintiff (Doc. 33); (2) a motion for summary judgment filed by Sheriff Hollingsworth and Sergeant Brian Orrell (Doc. 45); and (3) a motion for summary judgment filed by Officer Donald Moreland, Detective Dan Ussery, Chief of Police Donnie Taber, and the City of Malvern (Doc. 48).

### I. Background

According to the affidavit of arrest completed by Detective Dan Ussery, the events of September 17, 2012, unfolded as follows:  On September 17, 2012, at approximately 10:20 p.m, Officer Donald Moreland, of the Malvern Police Department, observed a white four door 1996 Ford Taurus go through a stop sign at the intersection of Section Line and Gloster Street.  *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) S.  When Moreland activated his lights and siren to stop the vehicle,

the driver increased his speed and attempted to flee.  *Id.*

At the intersection of First Street and Cabe Street, the vehicle came to a stop and a male exited the passenger side.  The male subject was wearing blue jeans, a ball cap, and a gray shirt. *Plff's Ex.* S.  The man raised his hands.  *Id.*  The driver of the vehicle then sped off.  *Id.*

The driver lost control and spun out near the waste water plant on North Walco Road.  *Plff's Ex.* S.  A black male, later identified as the Plaintiff, got out of the vehicle and ran into the woods. *Id.*

Moreland ordered the Plaintiff to stop or Moreland would let his dog Csipa loose on the Plaintiff.  *Plff's Ex.* S.  Moreland released Csipa.  *Id.*  When Csipa neared the Plaintiff, he stopped running and placed his hands in the air.  *Id.*  Csipa was put back on the leash and Sergeant Kyle and Officer Taylor arrived and placed Plaintiff into custody.  *Id.*  Plaintiff had an outstanding absconder warrant from parole and probation.  *Id.*

A small baggie of marijuana and several torn baggies were located on the Plaintiff.  *Plff's Ex.* S.  Moreland conducted a secondary search of the area where he and Csipa had chased Plaintiff through the woods.  *Id.*  A Newport Cigarette pack contained a small baggie of methamphetamine. *Id.*  The package was dry even though it had rained heavily that night and was misting at the time it was located.  *Id.*  Plaintiff was charged with possession of a controlled substance and fleeing.

Deputy James Tallant located a white male subject at the apartment of First Street.  *Plff's Ex.* X.  Moreland responded and identified him as the white male who had exited the vehicle.  *Id.*  He was identified as Matthew Wofford and arrested on outstanding warrants.  *Id.*

Plaintiff's version of the events of September 17th is as follows:  According to the Plaintiff, Moreland was no where near the area at 10:20 p.m.  *Plff's Motion* at pg. 1.  Plaintiff maintains this

fact can be established by a review of the dash cam video from the evening in question.[1]  *Id.*  Plaintiff asserts that Ussery knowingly falsified the affidavit of probable cause.  *Id.* at pg. 2.  Plaintiff maintains Chief of Police Donnie Tabor knew, or should have know, of the falsified affidavit because the vehicular fleeing charge was dropped to fleeing on foot.  *Id.*  Plaintiff maintains the charge was reduced to cover up the falsified affidavit.  *Id.*  Plaintiff alleges that Tabor did nothing to discourage, decrease, correct, or reprimand corrupt practices under his supervision.  *Id.*

Plaintiff alleges that he stopped at the intersection of Gloster and Section Line and there were no police officers in the area.  He indicates he was headed left on First Street when Moreland came off of Babcock Street.  Moreland put on his sirens and lights and Plaintiff, who had an absconding warrant, did not stop.  *Plaintiff's Response* (Doc. 55)(hereinafter *Resp.*) at ¶ ¶ 6-8.  Plaintiff states he let out his brother-in-law out at the intersection of First and Cabe Streets because his brother-in-law did not want to go to jail and knew there was a warrant out for his arrest.  Plaintiff continued until he lost control of his vehicle.  *Resp.* at ¶ 9.  He fled on foot until the police dog got behind him.  *Id.*  The dog did not bite or injure Plaintiff.  *Id.* at ¶ 11.  Plaintiff was handcuffed and searched.  *Id.* at ¶ 12.  Plaintiff admits that a small bag of marijuana was found on him. *Id.* at ¶ 13.

On September 21st, a bench warrant was issued for Plaintiff for the crimes of fleeing on foot, possession of a controlled substance (methamphetamine), and being a habitual offender.  *Plff's Ex.* T.

On September 24th, Plaintiff states he was served with a bench warrant obtained through the use of Ussery's falsified probable cause affidavit.  *Resp.* at ¶¶ 15-16.  Plaintiff maintains this warrant was never filed and entered into the criminal docket sheet and is therefore illegal.

---

[1] The video apparently is no longer in existence.

On September 27, 2012, an information was filed in the Circuit Court of Hot Spring County, Arkansas, charging the Plaintiff with residential burglary, robbery, and being a habitual criminal. *Hot Springs Defedants' Exhibit* (hereinafter *H.S. Defts' Ex.*) B.

On November 7th, Plaintiff states he was served with another warrant for burglary and robbery. Plaintiff stated he had been out drinking and lost his coat. However, his coat was located one-tenth of a mile from the alleged crime scene. Plaintiff states DNA later established it was Plaintiff's coat. Plaintiff maintains this warrant was never filed and entered into the criminal docket sheet and is therefore illegal.

As a result of the defective warrants, Plaintiff states he was incarcerated in the Hot Spring County Detention Center (HSCDC) from September 17, 2012, until September 26, 2012. From September 26th until November 27th, Plaintiff was incarcerated in the Technical Violator's Program. He was booked into the HSCDC again on November 27, 2012, until February 26, 2013, on charges of robbery and residential burglary. *H.S. Defts' Ex.* A; *Resp.* at ¶ 24. He was transferred to the Arkansas Department of Correction (ADC) on February 26, 2013. *Resp.* at ¶ 24.

With respect to his conditions of confinement at the HSCDC, Plaintiff maintains the diet met no dietary guidelines, there was no kitchen supervisor over the 309 inmates, no dietician was employed, not enough food was served, no vegetables were served, there was an inadequate amount of meat, he was not given sausage and cheese for breakfast like other inmates, and there was no record of the food being served. *Plff's Exs.* B-E, J, P-Q; *Resp.* at ¶¶ 29-30, Plaintiff described the daily diet as: oatmeal and a slice of bread for breakfast; two slices of bread, two thin slices of bologna, two or three cookies, and a bag of chips for lunch; and mashed potatoes for supper. *Plff's Ex.* B; *Resp.* at ¶¶ 31-32. In his response, Plaintiff states that "[d]inner was half way decent and much more tolerable." *Resp.* at ¶ 31.

4

Plaintiff received three meals each day.  *Resp.* at ¶ 31.  Plaintiff also states his tray always came from the bottom of the food cart and he was served "special trays" that contained different and less food than other prisoners and on at least one occasion contained pubic hair.  *Plff's Motion* at 3; *Plff's Ex.* P.  Finally, Plaintiff complained that the inmates only got to eat hamburger patties while the officers got chicken patties, Salisbury steak, chicken fried stead, chicken strips, pizza sticks, sausage, bacon and eggs, fish patties, and other foods that Plaintiff said was provided for the inmates. *H.S. Defts' Ex.* F.

On January 10, 2013, Plaintiff refused to take most of his morning medication as he had done on multiple occasions.  *H.S. Defts' Ex.* K.  He complained that he believed someone was lacing the medication.  *Id.*  Plaintiff was taken to the front of the jail and assured no one was tampering with his medication and reminded of the importance of taking it on a daily basis.  *Id.*  The doctor had also advised the Plaintiff to take his medication when it was given to him.  *Id.*

On January 16, 2013, Plaintiff states he was involved in a "tussle" with eleven detention center officials and in the process his right middle finger was permanently injured.  *Plff's Motion* at 3; *Amended Complaint* at 13; *Resp.* at ¶ 41.  Plaintiff admits that he "flinched his head and shoulder at Officer Sealy as if [he] were about to throw a punch."  *Resp.* at ¶ 42.  Plaintiff claimed he was just playing.  *Id.*  Plaintiff states that when Officer Sealy pushed him that he put his hand out to keep from crashing into the wall but only his middle finger came into contact with the wall and it was bent almost completely back.  *Id.* at ¶ 43.  Plaintiff resisted because "Officer Sealy had a look like he was about to use excessive force."  *Id.* at ¶ 44.

An incident report prepared by Deputy Michael Sealy contains the following account of this incident:

On 01/16/2013, at approximately 1840 hours, I Deputy Michael Sealy was

5

entering c-pod with two 309's, to check the sink located in the bathroom.  As I opened c-pod's door, 2 inmates w[]ere standing by the door.  I told them both to step back from the door.  One of the inmates followed my instructions, but the other inmate identified as Patrick Sherman, B/M . . . failed to comply with my instructions.

I told Sherman once again to step back from the door.  Sherman made a fist and reared back in an aggressive manner as [if] to strike me.  As he began a forward movement in my direction I put my hands up to block the strike.  Sherman began to laugh and stated he was just playing with me.  I told Sherman that I didn't think it was funny and to come with me.  Sherman once again failed to follow my instructions. I grabbed Sherman by his right arm, to escort hm out of the pod, to place him in a holding cell for his actions.

As I was escorting Sherman out of the pod, he began to pull away and resist. Officer Clay Coke with the Malvern Police Department ran into the pod to assist me. Sherman co[]ntinued to resist.  Other officers that w[]ere also in the jail responded to c-pod to assist.  After a short struggle we were able to gain control of Sherman and place him into handcuffs.  Deputy Dustin Burnett escorted Sherman to booking where he was placed in holding cell #2.  End of report.

*H.S. Defts' Ex.* L.

Plaintiff states he received no medical care for the injury.  *Plff's Motion* at 3.  Plaintiff submitted multiple requests for medical treatment.  *Plff's Exs.* F-I; *Resp.* at ¶¶ 45-48.  In response to one request, he was told that is what he got when he beat his fist against the wall.  *Plff's Ex.* G; *Resp.* at ¶ 47.  In response to two other requests, he was told not to swing on an officer.  *Plff's Exs.* H & I; *Resp.* at ¶ 48.  Plaintiff never received medical treatment for his injured finger.  *Resp.* at ¶ 49. With eighteen years of experience in prison, he states he has learned that he has to take care of himself because "absolutely no one else does."  *Id.*  He indicates he kept his finger wrapped and finally did some martial arts exercise to strengthen it."  *Id.*

Plaintiff also states there was no law library.  *Plff's Motion* at 4; *Resp.* at ¶ 25.  Plaintiff states he also did not have the adequate assistance of an attorney.  *Resp.* at ¶ 26.  He alleges that the public defenders are so busy that they do not have time to see their own clients or to respond to letters. However, neither Sheriff Hollingsworth or Orrell denied him access to communicate, in any manner,

with his court appointed attorney.  *Resp.* at ¶¶ 27-28.

On January 29, 2013, Plaintiff appeared before the Honorable Chris Williams in Hot Spring County Circuit Court, and plead guilty to felony possession of a controlled substance and felony fleeing in connection with the with the September 17, 2012, arrest.  *Malvern Defts' Ex.* B; *Resp.* at ¶ 17.  Plaintiff did not challenge the legality of his arrest during his criminal case.  *Resp.* at ¶ 18.

On January 30, 2013, Plaintiff was sentenced on the charges of fleeing, residential burglary, and robbery.  *H.S. Defts' Ex.* N.  Plaintiff indicates he was convicted of failure to yield to an emergency vehicle and reckless driving in municipal court and then convicted of battery, assault, and fleeing in Circuit Court based on the same act.  *Resp.* at ¶ 14.  Plaintiff maintains the failure to yield and reckless driving were lesser-included offenses of battery and fleeing but he could not get the Arkansas Supreme Court to rule on this.  *Id.*

He maintains detention center officials refused to complete the account certificate portion of the IFP application and also threw his § 1983 complaint out on February 25th.  *Id.* at 5.  Plaintiff states he was transferred to the ADC the following day.   Plaintiff also indicates a $20 money order was sent to him at the detention facility and it was kept and not forwarded to the Plaintiff.  *Id.*  With respect to the grievance procedure, Plaintiff states there was no appeal process.  *Plff's Motion* at 5.

On June 7, 2013, the Circuit Court of Hot Spring County Arkansas Criminal Division addressed his complaint that the officer had incorrectly inspected the crime scene concerning the September 17, 2012, arrest.  *Resp.* at ¶ 19.  The Court ruled that his attempt to appeal that matter was without merit since he plead guilty.  *Id.* at ¶ 20.

## II.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  Discussion

**(A).  Plaintiff's Motion for Summary Judgment against Sheriff Hollingsworth and Brian Orwell (Doc. 33) and Cross Summary Judgment Motion filed by Sheriff Hollingsworth and Brian Orrell (Doc. 45)**

Plaintiff has asserted the following claims against Sheriff Hollingsworth and Brian Orwell: (1) denial of access to a law library and/or legal materials; (2) inadequate and unsanitary diet; (3) an unnamed official throwing away his § 1983 complaint; (4) he was assaulted by eleven officers; (5) he was not provided with medical care for a finger injured during the incident; (6) his blood pressure medication being "laced" with something in order to make him have a heart attack; and (7) the grievance procedure was inadequate because there was no appeal.  The parties have filed cross-motions for summary judgment on these claims.

8

**(1).  Denial of Access to a Law Library & Throwing Away of a Complaint**

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system."

*Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing*, *Lewis v. Casey*, 518 U.S. 343 (1996);

*Bounds v. Smith*, 430 U.S. 817, 821 (1977)).   In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail.   Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.  To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims.  Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

 In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme

Court in *Lewis v. Casey*, 518 U.S. 343 (1996) and *Bounds v. Smith*, 430 U.S. 817 (1977), "determined

that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or

collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement,

but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'"

*Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

In this case, Plaintiff states he was harmed because he was unable to conduct research for this

civil case and was unable to perform research in his criminal case.  He indicates the public defender

was overworked and did not have sufficient time to devote to his case.  He refers to his public

defender as a "public pretender."  A claim of ineffective assistance of counsel is one that should be

brought in a habeas case.  Plaintiff may not use the civil rights statutes as a substitute for *habeas

corpus* relief.   In other words, he cannot seek declaratory or injunctive relief relating to his

confinement and/or conviction.  *See e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 483-89 (1994); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973)(habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement).

He missed no deadlines imposed by the Court.  No was case dismissed because he failed to file documents with the Court.  *See e.g. Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).  Although he does not believe he was represented well in his criminal case, the fact remains that he was represented by counsel.  As Plaintiff suffered no injury because he was denied access to a library, this claim fails.

Similarly, his claim that an unnamed officer threw out his § 1983 complaint fails.  Plaintiff did not see anyone throw the envelope containing the complaint in the trash.  *Resp.* at ¶ 53. He believed it was thrown away because he did not receive a file marked copy of it.  *Id.* at ¶ 55. However, there could be any number of explanations for that including it having been lost in the mail or returned as undeliverable since Plaintiff was no longer in the HSCDC.  Moreover, Plaintiff had a copy of the complaint.  *Plff's Ex.* A; *Resp.* at ¶ 53.  He therefore had access to it and could file it at any time.  Plaintiff suffered no actual injury.

**(2).  Inadequate and/or Unsanitary Diet**

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

10

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1 (1992)(The objective component is "contextual and responsive to contemporary standards of

decency.")(quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Plaintiff on must show the Defendants were deliberately indifferent to his dietary needs. *Wishon*, 978 F.2d at 449.

Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment.  Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. *See e.g., Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

Here, Plaintiff does not maintain that the meals were prepared in an unsafe manner.  He does not assert that he became ill as a result of the diet he was served or that he lost any significant amount of weight as a result of the diet he received.  *Resp.* at ¶ 33-35.  In fact, the records indicate Plaintiff weighed 250 pounds when booked into the jail on November 27, 2012, and when weighed 249 pounds during his intake at the ADC on February 26, 2013.  *H.S. Defts' Exs.* I & J; *Resp.* at ¶¶ 34-35. In responding to interrogatories, Plaintiff stated that any adverse consequences he suffered as a result of the diet could not be known because he was not given a physical examination during his

incarceration. *H.S. Defts' Ex.* G at Interrogatory 7.

I note that Plaintiff's description of the daily diet is not consistent throughout the summary judgment record. In responding to the summary judgment motions, he referred to dinner as half-way decent and being more tolerable and also complained that the inmates only received hamburger patties while the jailers received a much greater variety of food items. *Resp.* at ¶ 31; *H.S. Defts' Ex.* F. However, he states not having fruits, vegetables, and adequate amounts of meat and bread could make you irritated, moody, and more likely to engage in negative behavior due to being hungry. *Resp.* at ¶¶ 34-35. He states inmates gambled with their trays and had their trays and commissary taken if left unattended for only a moment. *Id.* While the diet, as described by Plaintiff, does not appear to have been well balanced, he suffered no physical effects as a result.

There is no constitutional requirement that the jail employ a dietician. While the State of Arkansas does require that the menus be approved by a dietician, violation of this requirement, if in fact it was violated, does not equate to a violation of the Constitution. *See e.g., United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013)(Violations of state law or state standards does not necessarily equate to a constitutional violation). Nor is there anything *per se* unconstitutional about using 309 inmates to prepare and serve meals.[2]

Next, Plaintiff alleges that the 309 inmate, who was bald, sometimes put pubic hair in his food and he suspects other things may have been put in his food on occasion. These isolated incidents do not state a claim of constitutional dimension. *See e.g., Wishon v. Gammon*, 978 F.3d 446, 449 (8th Cir. 1992)("[P]risoners have a right to nutritionally adequate food; however, Wishon has presented no evidence that the food he was served was nutritionally inadequate or prepared in a

---

[2] Act 309 of 1983 as amended is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates on a temporary basis in detention facilities operated by counties and cities. The inmates may be used to work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee.

manner presenting an immediate danger to his health, or that his health suffered as a result of the food"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985)("The fact that the food occasionally contains foreign objects . . . does not amount to a constitutional deprivation"). *See also Lunsford v. Reynolds*, 376 F. Supp. 526, 527 (W.D. Va. 1974)("The only contention concerning food which is detailed at all, is the inmates' complaint that their food frequently contains insects. Nevertheless, occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion"). Defendants are entitled to summary judgment on this claim.

### (3). Excessive Force

According to jail records, on January 16, 2013, Plaintiff was involved in an incident where he had to be taken to the ground by a jail officer and a Malvern Police Department Officer when he resisted being transported to a holding cell. *H.S. Defts' Ex.* L. After a short struggle, Plaintiff was restrained and placed in handcuffs. *Id.* Plaintiff maintains his finger was injured in the incident. *H.S. Defts' Ex.* M. An officer responded that his finger was fine. *Id.* Plaintiff did not mention any injury to his finger during his initial health screening at the ADC on February 26, 2013. *H.S. Defts' Ex.* J.

Plaintiff does not identify the jail personnel involved; he does not allege that either Defendant was personally present, participated in, or even knew of the alleged use of excessive force. *See Ripson v. Alles*, 21 F.3d 805, 808-09 (8th Cir. 1994)(§ 1983 liability requires personal or direct involvement in alleged constitutional violation). No claim is stated against the named Defendants.

### (4). Denial of Medical Care

"Under the Eighth Amendment's proscription against cruel and unusual punishments, prison officials must provide medical care to inmates." *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir.

14

2008)(internal quotation marks and citation omitted).  "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs." *Laganiere v. County of Olmstead*, 772 F.3d 1114, 1116 (8th Cir. 2014)(citation omitted).

To establish a prima facie case, Plaintiff  must demonstrate that:  (1) he suffered from an objectively serious medical need; and (2) Defendants actually knew of, but deliberately disregarded, that need.  *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007).  "An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's care." *Laganiere*, 772 F.3d at 1116 (internal quotation marks and citation omitted).

Plaintiff points to two deficiencies in his medical care.   First, he maintains he was not provides medical care for an injury to his finger.  Second, he maintains that some unnamed individual laced his blood pressure medication.  He believes this because after taking his medical he experienced irregular and fast heartbeats which he had not experienced before. *Resp.* at ¶¶ 36-37.  Plaintiff could not put "a finger" on who was lacing his medication but believed it was a deputy sheriff, whose name he cannot recall. *Resp.* at ¶ 40.

On January 17, 2013, Plaintiff filed a grievance stating that his right middle finger was broken. *H.S. Defts' Ex.* M.  A deputy responded that Plaintiff had informed him the finger was fine. *Id.*   Plaintiff submitted additional grievances on January 18th and the 21st, *Plff's Exs.* G-I.  In response to the last two, he was told by Defendant Orrell not to swing on officers. *Plff's Exs.* H-I.  Plaintiff states he did several months of "self therapy on his own finger nursing it back to health." *Plff's Motion* at 3.  After the first two days, January 16th and January 17th, Plaintiff states he started wrapping the finger tightly, rubbing on it, and squeezing on it to relieve the pain. *Resp.* at ¶ 50.  The finger was "more stiff and deformed looking than painful" and "it wouldn't bend normally." *Id.*

15

Plaintiff did not inform anyone at the ADC that he had injured his finger.  *Id.* at ¶ 51.

Defendants contend that a broken finger does not constitute an objectively serious medical need.  Close review of the cases relied upon by Defendants reveals that they are not persuasive authority.  Defendants rely on a number of unpublished cases all of which arose in the district courts of New York.  Review of just two of the cases show that the cases rely on a definition of a "serious medical need" that is significantly more onerous than the definition utilized in this circuit.

In *Ravenell v. Van der Steeg*, 2007 WL 765716 (S.D.N.Y. March 14, 2007), on July 30, 2004, an inmate dropped a dumb bell on his hand.  He was diagnosed with a broken right index finger and sent to the hospital for further evaluation.  An x-ray was taken and he was examined by an emergency room physician and an orthopedic surgeon who determined a closed reduction was required.  There was a factual dispute as to whether the closed reduction was ever performed.  In August another x-ray was performed and Plaintiff was sent to an orthopedic surgeon.  He was seen three times by this surgeon.  Plaintiff requested a second opinion and was sent to another orthopedic surgeon who operated on the finger.

The court noted that a condition constituted a serious medical need if it was "a condition of urgency, one that may produce death, degeneration or extreme pain."  *Ravenell*, 2007 WL 765716, *3 (internal quotation marks and citation omitted).  The court stated there were serious questions regarding whether Plaintiff could demonstrate the injury was sufficiently serious.  *Id.* at *4.  Regardless of the seriousness of the injury, the court held there was no evidence of deliberate indifference.  *Id.*

In *Henderson v. Doe*, 1999 WL 378333 (S.D.N.Y. June 10, 1999)*,*  an inmate injured his pinky finger while playing basketball.  Within a half an hour, he was examined by a nurse who put an ice pack on the finger, placed it in a splint, and scheduled an x-ray.  The x-ray was taken three days

16

later and he was diagnosed with a broken finger and the finger was re-wrapped in another splint.  The following day he was examined again and the splint was rewrapped and he was given pain medication.

There the court stated the injury must be "sufficiently serious, meaning that it must involve a condition that may produce death, degeneration or extreme pain." *Henderson*, 1999 WL 378333, *2.  The court held that the Plaintiff had not pleaded a "sufficiently serious" condition.  *Id.*  It also held that there was no evidence of deliberate indifference.  *Id.* at *3.

In contrast, here "[a]n objectively serious medical need is one that has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's care." *Laganiere*, 772 F.3d at 1116 (internal quotation marks and citation omitted).  Under this definition, I believe there is at least a question of fact as to whether a broken finger constitutes a serious medical need.  Moreover, an intentional refusal to provide medical care constitutes deliberate indifference.  *See Vaughan v. Lacey,* 49 F.3d 1344, 1345 (8th Cir. 1995)(deliberate indifference includes intentional denial of access to medical care).

Defendant Orrell was the individual who responded to two of Plaintiff's requests for medical care.  A claim is stated against him.  However, there is no evidence of personal involvement on behalf of Sheriff Hollingsworth.  *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011)(general responsibility for supervising prison is insufficient to establish personal involvement).

Plaintiff cannot recall the name of the deputy who passed out medication but he believes he may have been the one tampering with his medication.  He does not allege any personal involvement on the part of the named Defendants.  No claim is stated here.

### (5).  Inadequate Grievance Procedure

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a

17

. . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . .  grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted); *see also Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)(denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id*. (citation omitted).  "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or  his grievances were ignored because of his exercise of his constitutional rights, or his ability to exercise any specific constitutional right was chilled by Defendants' actions.  Defendants are entitled to judgment in their favor on this claim.

### (6).  Missing Funds

Plaintiff's allegations that a $20 money order was never forwarded to him do not rise to the

level of a constitutional violation.  First, Plaintiff advances nothing to suggest the missing funds were intentionally taken by either of the named Hot Spring County Defendants.  *See Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir.1994)(Inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983).  Second, even if the deprivation was intentional, Plaintiff has adequate post-deprivation remedies.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)(negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy); *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).

### (7).  Falsified Warrant Affidavit

Plaintiff contends the warrant for his arrest was based on Ussery's falsified affidavit. However, Plaintiff was convicted on the offenses he was charged with as a result of the affidavit of probable cause and the warrant.  The conviction for the offenses bars his § 1983 claim alleging a lack of probable cause.  *Malady v. Crunk*, 902 F.2d 10, 11-12 (8th Cir. 1990).

Moreover, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. 486-87.  Plaintiff's conviction has not be set aside or otherwise held to be invalid.

19

### (8).  Official Capacity Claims

With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).   In other words, the official capacity claims are treated as claims against Hot Spring County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Hot Spring County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).  The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir.2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir.2007).

*Id*. at 817-18.

Plaintiff was asked whether he contended that a custom, policy, or practice of Defendants resulted in his being deprived of his federal constitutional rights, he responded:  Yes.  *Resp.* at ¶ 57. With respect to the County, he stated: the same judge who issues the arrest warrants presides over the case and sets bond and is not neutral; the Malvern Police on behalf of the County engage in illegal arrests and conspire to conceal their actions in falsifying documents; jail officials engaged in excessive force or fairly reasonable force and then deny medical treatment to conceal injuries; jail

20

officials retaliate against inmates for filing grievances; no law library was provided and appointed counsel was ineffective; and there was interference with outgoing or incoming mail.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to do so. His litany of the ways he believes his rights are violated do nothing to show a "deliberate choice of a guiding principle."

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Id., 725 F.3d at 828 (citations omitted).

Once again, Plaintiff's allegations merely consist of a recitation of the ways he believes his constitutional rights were violated. They do nothing to show a persistent pattern of unconstitutional misconduct. These allegations do not suggest the existence of any policy, custom, or practice of the County. Furthermore, for the reasons set forth below, the Sheriff has been found not to be individually liable on Plaintiff's claims. Therefore, Plaintiff's official capacity claims against Hot

Spring County fail.  *See e.g., Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 799 (8th Cir. 2013).

### (9).  Claims against Sheriff Hollingsworth

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).

There has been no showing that Sheriff Hollingsworth was involved in any of the incidents at issue here or in the day-to-day operations of the jail.  Plaintiff has not alleged that he spoke directly to the Sheriff regarding any of his grievances or complaints.  In fact, Plaintiff states that Sheriff Hollingsworth did not involve himself "with the matters which happened" in the jail. *Plff's Motion* at 4.  Sheriff Hollingsworth is entitled to summary judgment on any individual capacity claim.

### (B).  Plaintiff's Motion for Summary Judgment (Doc.  33) and the Cross Motion for

**Summary Judgment filed by Donnie Taber, Donald Moreland, Dan Ussery, and the City of Malvern (Doc. 48)**

Plaintiff maintains these Defendants violated his rights in the following ways: (1) Moreland performed an illegal traffic stop and search; (2) Ussery submitted a falsified affidavit of probable cause; (3) Taber failed to properly supervise, train, or reprimand Moreland and Ussery; and (4) the City of Malvern had an unconstitutional policy or custom that condones illegal arrests and cover-ups.

Defendants maintain they are entitled to judgment in their favor for the following reasons: (1) when Plaintiff fled from Moreland he created an independent basis for Moreland to arrest him rendering Plaintiff's remaining claims moot; (2) Plaintiff's plea of guilty to the offenses he was charged with bar his claim; (3) Moreland's reliance on a warrant issued by a circuit judge does not render him liable to the Plaintiff unless he had knowledge the warrant was faulty; (4) failure to reprimand does not state a cognizable basis for a federal action; (5) there is no policy that condones illegal arrests and cover-ups; and (6) Taber, Ussery, and Moreland are entitled to qualified immunity.

**(1). The Stop**

"The Fourth Amendment guarantees the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)(quoting U.S. Const. amend IV). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment.]" *Whren v. U.S.*, 517 U.S. 806, 809 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810.

"A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement. Once an officer has probable cause, the stop is objectively

reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)(citations omitted).   Likewise, "it is irrelevant that the officer would have ignored the violation but for his ulterior motive." *Id.*

In this case, there is a dispute of fact as to whether or not the Plaintiff ran a stop sign at the intersection of Section Line and Gloster Street.   However, it is undisputed that when Moreland activated his lights and sirens the Plaintiff first fled by vehicle and then on foot in violation of Ark. Code Ann. § 5-54-125.   Section 5-54-125(a) provides that "[i]f a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance."   The statute further provides that "[f]leeing is a separate offense and is not considered a lesser included offense or component offense with relation to other offense which may occur simultaneously with fleeing."   Ark. Code. Ann. § 5-54-125(b).   The fleeing charge provides an independent basis for Plaintiff's arrest as did the absconding warrant.

**(2).  The Search**

The search in this case occurred after Plaintiff's arrest.   In *United States v. Chartier,* 772 F.3d 539 (8th Cir. 2014), the Eighth Circuit stated:

> Under the Fourth Amendment, "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the warrant requirement. Missouri v. McNeely, —— U.S. ——, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." Arizona v. Gant, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Such a search may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction. Id. at 339, 129 S.Ct. 1710 (citing Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Whether the search of Chartier's person falls within the search-incident-to-arrest exception thus turns on whether there was probable cause for Chartier's arrest. Probable cause exists at the time of arrest if the totality of the circumstances known to the officers involved is "sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." United States v. Mendoza,

24

421 F.3d 663, 667 (8th Cir.2005) (quoting *United States v. Cabrera–Reynoso*, 195 F.3d 1029, 1031 (8th Cir.1999)).

*Id.* at 545.  A search incident to arrest includes a search of the person and immediate surrounding. *United States v. Regan*, 525 F.2d 1151, 1156 n.3 (8th Cir. 1975).

Plaintiff's conviction of the drug charges precludes his challenge to the legality of the search. "The rule in *Heck* covers any § 1983 claim that would necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.  Thus, the relevant inquiry is not the constitutional underpinning of the inmate's § 1983 cause of action." *Portley-El v. Brill*, 288 F.3d 1063, 1067 (8th Cir. 2002)(internal quotation marks and citation omitted).  If Plaintiff were to succeed on this claim, demonstrating that Moreland illegally searched him, this would necessarily imply the invalidity of the conviction on the drug charges.  *Heck* therefore bars his claims.  *See e.g., Ballenger v. Owens*, 352 F.3d 842, 844, 847 (4th Cir. 2003)(holding that *Heck* prohibited plaintiff from asserting claims that defendants unconstitutionally stopped him, searched his automobile, and seized drugs and a handgun because the plaintiff was convicted of trafficking in drugs based on evidence found during a traffic stop); *Woods v. Candela*, 47 F.3d 545, 546 (2nd Cir. 1995)(alleged constitutional violations during traffic stop that resulted in conviction was *Heck* barred until the conviction was overturned); *Collins v. Smith*, Civil No. 12-cv-801, 2012 WL 3765135 (S.D. Ill. August 29, 2012)(Claim that the original traffic stop was unconstitutional could not proceed under *Heck* because the ensuing search was the only reason drugs were found and if the evidence was rendered unuseable, his conviction could not stand).

### (3).  Falsified Police Report, Affidavit of Probable Cause, and Warrant

Plaintiff contends the warrant for his arrest was based on Moreland's falsified police report, Ussery's falsified affidavit, and an invalid warrant.  However, as noted above, Plaintiff was convicted

of the offenses he was charged with as a result of the affidavit of probable cause and the warrant.  The

conviction for the offenses bars his § 1983 claim alleging a lack of probable cause.  *Malady v. Crunk*,

902 F.2d 10, 11-12 (8th Cir. 1990).

Moreover, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim

for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by

actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until

"the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such a determination, or called into question by a

federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. 486-87.  Plaintiff's conviction

has not be set aside or otherwise held to be invalid.

### (4).  The Supervisory Liability Claims Against Taber

A claim of deprivation of a constitutional right cannot be based on a respondent superior

theory of liability.  *See Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).  "The

general responsibility . . . for supervising the operation of a [facility] is not sufficient to establish

personal liability."  *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

"[A] bare allegation that someone in supervisory authority has been deliberately indifferent, without

any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of

inadequate training or supervision of subordinates, it [not] sufficient to state a [§ 1983] claim."  *Id.*;

*see also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

Even if a supervisor is not involved in day-to-day operations, his personal involvement may

be found if he is involved in "creating, applying, or interpreting a policy" that gives rise to

unconstitutional conditions.  In requiring a plaintiff to allege that each defendant was personally

involved in the deprivation of his constitutional rights, we assess each defendant relative to his

authority over the claimed constitutional violation." *Jackson v. Nixon*, 747 F.3d 537, 544 (8th Cir. 2014)(internal quotations marks and citations omitted).

There is no allegation that Chief Taber was involved in any way in the actions taken by Moreland or Ussery. Instead, Plaintiff makes conclusory statements that Chief Taber knew or should have known about the violations. Such statements are insufficient to state a supervisory liability claim. *See e.g., Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014)("[H]is conclusory statement that Warden Burgess 'knew or should have known' of the alleged First Amendment violation is insufficient. Instead, Jackson must plead facts that plausibly show direct involvement by the warden in the formation, implementation, or enforcement of that policy, which at this stage of the litigation he has failed to do.").

The Plaintiff claims that Chief Taber failed to reprimand Moreland and Ussery for making an illegal arrest and covering it up. As noted above, Plaintiff plead guilty to the charges he was arrested on. *Resp.* at ¶ 23. Thus, the premise of Plaintiff's claim against Chief Taber is invalid. Chief Taber cannot be held liable on a supervisory liability claim.

### (5). The Official Capacity Claims

With respect to his official capacity claim, Plaintiff maintains the City of Malvern has a policy of illegal arrests and cover-ups. The sole evidence he offers to establish the existence of the policy is his alleged illegal arrest. A single instance of alleged unconstitutional conduct is generally insufficient to establish that a policy was unconstitutional. *See e.g. Russell v. Hennepin County*, 420 F.3d 841, 848 (8th Cir. 2005)(single instance insufficient to "establish causation as required to advance a claim of municipal liability"). Plaintiff's official capacity claim fails because he has not submitted any evidence that his arrest was the result of an unconstitutional or illegal county policy, custom, ordinance, regulation, or decision. *Monell v. Department of Social Services*, 436 U.S. 658,

27

694 (1978).

### IV. Conclusion

For the reasons stated, I recommend that:

(1) Plaintiff's motion for summary judgment (Doc. 33) be denied;

(2) the motion for summary judgment (Doc. 45) filed by Sheriff Hollingsworth and Sergeant Orrellbe granted in part and denied in part.  Specifically, the motion should be granted with respect to all claims except the denial of medical care claim asserted against Sergeant Brian Orrell.  Sheriff Hollingsworth should be terminated as a Defendant;

(3) the motion for summary judgment (Doc. 48)  filed by Chief Donnie Taber, Officer Donald Moreland, Officer Dan Ussery, and the City of Malvern should be granted. These parties should be terminated.

This leaves for later resolution the denial of medical care claim against Sergeant Orrell.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of February 2015.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

28